**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| CHRISTINE ABEL, STEVEN AULD and DAVID PENNINGTON, individually and as representatives of a class of similarly situated persons, on behalf of the CUNA MUTUAL 401(K) PLAN FOR NON-REPRESENTED EMPLOYEES,<br><br>        Plaintiffs,<br><br>   v.<br><br>CMFG LIFE INSURANCE COMPANY; THE BOARD OF TRUSTEES OF CMFG LIFE INSURANCE COMPANY; THE EMPLOYEE BENEFIT PLAN ADMINISTRATION COMMITTEE OF THE CUNA MUTUAL 401(K) PLAN FOR NON-REPRESENTED EMPLOYEES; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>        Defendants. | Case No:<br><br><br>**CLASS ACTION COMPLAINT** |

## I.    INTRODUCTION

1.    Plaintiffs, Christine Abel ("Abel"), Steven Auld ("Auld") and David Pennington ("Pennington") (collectively, "Plaintiffs"), individually in their capacity as participants of the CUNA Mutual 401(k) Plan for Non-Represented Employees ("Plan"), bring this action ("Action") under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participants and beneficiaries of the Plan, against Defendants, CMFG Life Insurance Company ("CMFG"), the Board of Trustees of CMFG Life Insurance Company ("Board"), the Employee Benefit Plan Administration Committee of the CUNA Mutual 401(k) Plan for Non-Represented Employees ("Administrative Committee" or "Committee"), and Does No. 1-20, who are members of the Administrative Committee or the Board or other fiduciaries of the Plan and

whose names are currently unknown (collectively, "Defendants"), for breach of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and related breaches of applicable law beginning six years prior to the date the Action is filed and continuing to the date this Action is filed, or such other date the Court determines is appropriate and just ( "Class Period").

2.     Defined contribution plans (*e.g.*, 401(k) and 401(a) plans) that are qualified as tax-deferred vehicles have become the primary form of retirement saving in the United States and, as a result, America's *de facto* retirement system.  Unlike traditional defined benefit retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or underperformance of pension plan assets used to fund defined benefits, the participants in defined contribution plans bear the risk of high fees and investment underperformance.

3.     The importance of defined contribution plans to the United States retirement system has become pronounced as employer-provided defined benefit plans are increasingly rare as an offered and meaningful employee benefit.

4.     As of December 31, 2020, the Plan had 4,461 participants with account balances and assets totaling approximately $865 million, placing it in the top 0.2% of all defined contribution plans by plan size.[1]  Defined contribution plans with substantial assets, like the Plan, have significant bargaining power and the ability to demand low-cost administrative and investment management services within the marketplace for administration of defined contribution plans and the investment of defined contribution assets.  The marketplace for

---

[1]The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2018 (pub. July 2021).

defined contribution retirement plan services is well-established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.

5.     Defendants maintain the Plan, and are responsible for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services.  Defendants are fiduciaries under ERISA, and, as such, owe specific duties to the Plan and its participants and beneficiaries, including obligations to act for the exclusive benefit of participants, ensure that the investment options offered through the Plan are prudent and diverse, and ensure that Plan expenses are fair and reasonable in relation the services obtained.

6.     Defendants have breached their fiduciary duties to the Plan.  As detailed below, Defendants selected, retained, and/or otherwise ratified poorly-performing investments instead of offering more prudent alternative investments that were readily available at the time Defendants selected and retained the funds at issue and throughout the Class Period.  Since Defendants have discretion to select the investments made available to participants, Defendants' breaches are the direct cause of the losses alleged herein.

7.     To remedy these fiduciary breaches and other violations of ERISA, Plaintiffs bring this class action under Sections 404, 409 and 502 of ERISA, 29 U.S.C. §§ 1104, 1109 and 1132, to recover and obtain all losses resulting from each breach of fiduciary duty.  In addition, Plaintiffs seek such other equitable or remedial relief for the Plan and the proposed class ("Class") as the Court may deem appropriate and just under the circumstances.

8.     Plaintiffs specifically seek the following relief on behalf of the Plan and the Class:

     a.     A declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law;

b.      A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the Plan and its participants;

c.      Equitable, legal or remedial relief for all losses and/or compensatory damages;

d.      Attorneys' fees, costs and other recoverable expenses of litigation; and

e.      Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## II.      THE PARTIES

9.      Abel is a former employee of CMFG and former participant in the Plan under 29 U.S.C. § 1002(7).  Abel is a resident of Great Bend, Kansas.  During the Class Period, Abel maintained an investment through the Plan in the BlackRock LifePath Index 2035 Fund and the JPMCB US Analyst Commingled Fund.

10.      Auld is a former employee of CMFG and former participant in the Plan under 29 U.S.C. § 1002(7).  Auld is a resident of Garden City, Missouri.  During the Class Period, Auld maintained an investment through the Plan in the BlackRock LifePath Index 2030 Fund.

11.      Pennington is a former employee of CMFG and former participant in the Plan under 29 U.S.C. § 1002(7).  Pennington is a resident of Jacksonville Beach, Florida.  During the Class Period, Pennington maintained an investment through the Plan in the BlackRock LifePath Index 2045 Fund and the BlackRock LifePath Index 2050 Fund.

12.      CMFG is headquartered in Madison, Wisconsin.  CMFG provides insurance products and services.  CMFG offers collateral protection, cyber and security incident, mortgage,

property and business liability, workers compensation, auto and home, and life insurance solutions.

13.     The Board appointed "authorized representatives" of CMFG, including the Administrative Committee, to serve as plan fiduciaries.  Does No. 1-10 are members of the Board who were/are fiduciaries of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002(21)(A) because each exercised discretionary authority to appoint and/or monitor the Administrative Committee, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

14.     The Administrative Committee is responsible for the general administration of the Plan and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102.  The Administrative Committee maintains its address at CMFG's corporate headquarters in Madison, Wisconsin.  The Administrative Committee and its members are appointed by CMFG or its delegate to administer the Plan on CMFG's behalf.

15.     Does No. 11-20 are the members of the Administrative Committee and are fiduciaries of the Plan by virtue of their membership on the Administrative Committee or otherwise are fiduciaries to the Plan.  Plaintiffs are currently unable to determine the membership of the Administrative Committee or the identities of the other fiduciaries of the Plan despite reasonable and diligent efforts, because the membership of the Administrative Committee and the identities of any other fiduciaries are not publicly available.  Therefore, these Defendants are named Does as placeholders.  Plaintiffs will move, pursuant to Federal Rule of Civil Procedure 15, to amend the Class Action Complaint ("Complaint") to name the members of the Administrative Committee, the members of the Board, and other responsible individuals as defendants as soon as their identities are discovered.

## III.   JURISDICTION AND VENUE

16.     Plaintiffs seek relief on behalf of the Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

17.     This Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. § 1331 because the Action arises under the laws of the United States.

18.      Venue is proper in this District pursuant to Section 502(e) of ERISA, 29 U.S.C. § 1332(e), and 28 U.S.C. § 1391 because CMFG's principal place of business is in this District and the Plan is administered from this judicial district.  Further, a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this District.

19.     Plaintiffs have standing to bring the Action because they maintained investments in the Plan in the investment options challenged in the Action during the Class Period.  Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), authorizes any participant, fiduciary or the Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily flowing to a plan.  As explained herein, the Plan has suffered millions of dollars in losses resulting from Defendants' fiduciary breaches and remains vulnerable to continuing harm, all redressable by the Court.  In addition, although standing under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), is established by these Plan-wide injuries, Plaintiffs and all Plan participants suffered financial harm as a result of the Plan's imprudent investment options and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries.

## IV.    FACTUAL ALLEGATIONS

### A.    Background and Plan Structure

20.    The Plan is a participant-directed 401(k) plan, meaning participants direct the investment of their contributions into various investment options offered by the Plan.  Each participant's account is credited with their participant contributions, applicable employer matching contributions, any discretionary contributions, and earnings or losses thereon.  The Plan pays expenses from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income.  Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses.  The investment options made available to Plan participants include various mutual funds and collective trust funds.

21.    Mutual funds are publicly traded investment vehicles consisting of a pool of monetary contributions collected from many investors for the purpose of investing in a portfolio of equities, bonds, and other securities.  Mutual funds are operated by professional investment advisers, who, like the mutual funds, are registered with the U.S. Securities and Exchange Commission ("SEC").  Mutual funds are subject to SEC regulation and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

22.    Collective trusts are, in essence, mutual funds not subject to SEC regulation.  Collective trusts fall under the regulatory purview of the Office of the Comptroller of the Currency or individual state banking departments.  Collective trusts were first organized under state law in 1927 and were blamed for the market crash in 1929.  As a result, collective trusts were severely restricted, giving rise to the more transparent and publicly-traded mutual funds described above.  Today, banks create collective trusts only for their trust clients and for

employee benefit plans, like the Plan.  Despite their historic lack of transparency, modern collective trust sponsors provide sufficient information for investors to make informed decisions about the merits of investing in collective trusts.  The main advantage of opting for a collective trust, rather than a mutual fund, is the negotiability of the fees; accordingly, larger retirement plans have the ability to leverage their size for lower fees.

23.     During the Class Period, Plan assets were held in a trust by the Plan trustee, State Street Bank and Trust Company.  All investments and asset allocations are performed through this trust instrument.

**B.      Target Date Funds**

24.     A target date fund ("TDF") is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches.  TDFs offer investors dynamic, straightforward asset allocation, while providing both long-term growth and capital preservation. All TDFs are inherently actively managed, because managers make changes to the allocations to stocks, bonds, and cash over time.  These allocation shifts are referred to as a fund's glide path.

25.     TDF glide paths are managed either "to" or "through" retirement.  A "to retirement" glide path generally assumes participants will withdraw their funds once they reach the presumed retirement age, or soon thereafter.  The asset allocation of a "to retirement" TDF remains static once the retirement date is reached.  A "through retirement" glide path expects participants will remain invested after reaching retirement and gradually draw down on their funds.  Accordingly, the terminal allocation of a "through" TDF is not reached until a predetermined number of years after the target date.

26.     "To" strategies are managed to protect against the risk of a market decline significantly diminishing assets, while the "through" approach focuses on the risk of outliving savings.  Each strategy treats the other's primary focus as a secondary objective (*i.e.*, most "to" managers "have the objective of limiting portfolio volatility up to retirement as the primary goal, and the income throughout retirement is more of a secondary objective.").[2]  TDFs designed to take investors *to* retirement typically de-risk faster than their "through" peers, and while this may offer greater potential protection against downside risk, it leaves investors exposed to the potentially destructive, lasting consequences of running out of money in retirement.

27.     As retirees trend toward keeping savings in their retirement plans post-retirement, "through" glide paths have been more widely utilized.[3]  Indeed, of the 28 TDF suites launched in the past decade which remain active, nearly 80% adopt a "through" approach.[4]

28.     The underlying mutual funds that TDF managers choose to populate each asset class can be actively or passively managed.  TDFs comprised of primarily or entirely passive strategies provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift.  TDFs filled with actively managed funds tend to provide more diversified asset class exposure while offering the potential for excess returns, particularly in less efficient asset classes where active management tends to outperform.

---

[2]Amanda Umpierrez, *Evaluating 'To' vs. 'Through' Glide Paths*, PLANSPONSOR, (Feb. 17, 2021), https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

[3]*Id.*

[4]MORNINGSTAR, 2022 TARGET-DATE STRATEGY LANDSCAPE (2022).

C.      **Defendants' Breaches of Fiduciary Duties**

29.     As discussed in detail below, Defendants have severely breached their fiduciary duties of prudence and loyalty to the Plan.  Plaintiffs did not acquire actual knowledge regarding Defendants' breaches at issue here until shortly before the Complaint was filed.

1.      **The Plan's Investment in the BlackRock LifePath Index Funds**

30.     Among other investments, the Plan lineup has, since at least December 31, 2010,[5] offered the BlackRock LifePath Index Funds ("BlackRock TDFs"), a suite of ten TDFs.[6]  The BlackRock TDFs are significantly worse performing than many of the mutual fund alternatives offered by TDF providers and, throughout the Class Period, could not have supported an expectation by prudent fiduciaries that their retention in the Plan was justifiable.

31.     Defendants were responsible for crafting the Plan lineup and could have chosen from a wide range of prudent alternative target date families offered by competing TDF providers, which are readily available in the marketplace, but elected to retain the BlackRock TDFs instead, an imprudent decision that has deprived Plan participants of significant growth in their retirement assets.

32.     A simple weighing of the merits and features of all other available TDFs at the beginning of the Class Period would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable or prudent option for the Plan.  In addition, any objective evaluation of the BlackRock TDFs would have resulted in the selection of a more consistent, better performing, and more appropriate TDF suite.  Instead, as is currently

---

[5]The Plan's Form 5500s provide a detailed schedule of the Plan's holdings at the end of each calendar year. The suite of BlackRock TDFs appears as a Plan investment option as far back as the 2010 Form 5500.

[6]The Plan offered an eleventh BlackRock TDF, the 2020 vintage, for a substantial part of the Class Period. During the Fourth Quarter of 2019, the 2020 Fund was reorganized into the Retirement Fund, and shareholders of the 2020 Fund received shares of the Retirement Fund.

in vogue, Defendants appear to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return. Had Defendants carried out their fiduciary responsibilities in a single-minded manner with an eye focused solely on the interests of the participants, they would have come to this conclusion and acted upon it. However, Defendants failed to act in the sole interest of Plan participants and breached their fiduciary duties by imprudently selecting, retaining, and failing to appropriately monitor the clearly inferior BlackRock TDFs.

33.     Since the fiduciaries here employed a fundamentally irrational decision-making process (*i.e.*, inconsistent with their duty of prudence) based upon basic economics and established investment theory, they clearly breached their fiduciary duties under ERISA – which are well-understood to be the "highest known to law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

34.     Exacerbating Defendants' imprudent decisions to add and retain the BlackRock TDFs is the suite's designation as the Plan's Qualified Default Investment Alternative ("QDIA"). Under DOL regulations, retirement plan fiduciaries can designate one of the investment offerings in a plan's lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment elections for their retirement assets. If participants do not indicate where their assets should be invested, all contributions are automatically invested in the QDIA. For this reason, it is vital for fiduciaries to understand the relevant plan participant population and ensure the QDIA is a suitable and prudent option. Indeed, Plan fiduciaries are responsible for the prudent selection and continuous monitoring of an appropriate QDIA. The BlackRock TDF with the

target year closest to a participant's assumed retirement age (*i.e.*, age 65) has served as the QDIA in the Plan throughout the Class Period.

35.     Given that the vast majority of Plan participants are not sophisticated investors, many, by default, concentrate their retirement assets in TDFs.  As such, the impact of Defendants' imprudent selection of TDFs is magnified vis-à-vis other asset categories.  Indeed, by December 31, 2020, approximately 46% of the Plan's assets were invested in the BlackRock TDFs.

i.     The Comparator TDFs

36.     Measured against appropriate, available alternative TDFs pursuant to the frameworks employed by prudent fiduciaries, the BlackRock TDFs are a vastly inferior retirement solution and could not have been justifiably retained in the Plan.  Throughout the Class Period, there were many TDF offerings that consistently and dramatically outperformed the BlackRock TDFs, providing investors with substantially more capital appreciation. Critically, at the time of Defendants' decisions to select and retain the BlackRock TDFs, those alternatives – unlike the BlackRock TDFs – supported a reasonable expectation of return to justify selection and retention in the Plan.  It is apparent, given the continued presence of the BlackRock TDFs in the Plan's investment menu, that Defendants failed to scrutinize the performance of the BlackRock TDFs against any of the more appropriate alternatives in the TDF marketplace in order to determine whether the expected performance of the BlackRock TDFs could support their continued retention in the Plan.  Accordingly, the Plan's continued investment in the BlackRock TDFs has resulted in participants missing out on millions of dollars in retirement savings growth that could have been achieved through an investment in any of the below alternative TDFs, and indeed many other options.

37.     Prudent fiduciaries evaluate TDF returns not only against an appropriate index or a broad group of all peer TDFs, but also against specific, readily investable alternatives to ensure that participants are benefitting from the current TDF offering.  The managers of the BlackRock TDFs, like those of many TDF suites, have designed a custom benchmark against which their performance can be assessed.  For each TDF vintage, the BlackRock LifePath Index Custom Benchmark is a weighted mix of several market indices that are representative of the asset classes in which the BlackRock TDFs invest.  As this composite benchmark simply mirrors the overall strategy of the series and fails to demonstrate how the investment is performing relative to peers, it is an evaluative tool.  Rather than demonstrate the success of the BlackRock TDFs in the broader TDF market, as, for example, can be achieved (and is commonly performed) by utilizing the S&P 500 Index to benchmark a domestic large cap equity fund, the BlackRock TDF custom benchmark merely reflects the managers' ability to execute their own particular strategy.  Thus, it was incumbent on the Plan fiduciaries, in order to satisfy the applicable standard of care throughout the Class Period, to assess TDFs against readily available prudent alternatives to ensure that participants are best served by the options available to them.

38.     The TDF market is particularly top-heavy; by the end of 2021 the top six largest TDF series managed approximately three-quarters of all TDF assets:

| Target Date Series | Mutual Fund ($B) | CIT ($B) | Total ($B) | Market Share |
|---|---|---|---|---|
| Vanguard Target Retirement | 660 | 530 | 1,190 | 36.4% |
| T. Rowe Price Retirement | 180 | 170 | 350 | 10.7% |
| BlackRock LifePath Index | 61 | 226 | 287 | 8.8% |
| American Funds Target Date Retirement | 239 | 9 | 248 | 7.6% |
| Fidelity Freedom | 221 | - | 221 | 6.8% |
| Fidelity Freedom Index | 106 | 46 | 152 | 4.6% |

39.     Accordingly, four of the five non-BlackRock suites shown above (the "Comparator TDFs") represent an ideal group for comparison, as they represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced.[7]

40.     Prudent fiduciaries are aware of the major offerings in the asset classes represented in a plan.  This is all the more important as it relates to a plan's QDIA, given the gravitation of plan assets to the QDIA and importance of the QDIA to the overall design of a plan's investment menu.

41.     In fact, Defendants could have sought comparative returns data and other metrics for each of the Comparator TDFs in real-time throughout the Class Period from the Plan's recordkeeper or the Plan's other service providers, or easily obtained it themselves through just a few clicks of a computer mouse.

42.     When evaluated against the Comparator TDFs, both individually and as a group, the returns of the BlackRock TDFs, at all stages along the glide path from aggressive to conservative, paled in comparison to those of the readily available alternatives.  Accordingly, the analytical frameworks employed by prudent fiduciaries could not have supported a determination that the expected returns of the BlackRock TDFs would justify their retention in the Plan.

43.     Any suggestion that such comparison is inappropriate because "to" glide paths, like that of the BlackRock TDFs, adopt a more conservative approach is misleading.  While the

---

[7]The other TDF suite in the largest six by market share during the relevant period was the Fidelity Freedom Funds ("Freedom Funds"), which do not represent an appropriate comparator.  The Freedom Funds would have been an imprudent selection for the Plan for the duration of the Class Period due to myriad quantitative and qualitative red flags after undergoing a strategy overhaul in 2014.  As a result of these issues, the Freedom Funds lost considerable assets and market share after their strategy overhaul in 2014.  Yet even the anemic and imprudent Freedom Funds outperformed the BlackRock TDFs during the Class Period.  While the Freedom Funds were not a suitable alternative for the Plan, a fiduciary applying the requisite scrutiny to the BlackRock TDFs would have been aware of their underperformance compared to the Freedom Funds, despite the issues plaguing the Freedom Funds.  This is even further confirmation of the inability of the BlackRock TDFs to provide competitive returns throughout the Class Period.

BlackRock TDFs de-risk at a quicker pace than most of the Comparator TDFs, the resulting equity allocation discrepancy is only reflected in its two most conservative vintages, the 2025 and Retirement TDFs. Indeed, the BlackRock TDF series has the industry's most aggressive glide path for investors furthest from retirement and maintains a comparable equity allocation to its peers until an investor is approaching retirement.[8]

| Percentage of Portfolio in Equities | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Target Year | 2065 | 2060 | 2055 | 2050 | 2045 | 2040 | 2035 | 2030 | 2025 | 2020 | 2015 | 2010 | 2005 | Retire |
| American Funds Trgt Date Retire | 85 | 85 | 85 | 85 | 84 | 81 | 71 | 59 | 50 | 45 | 42 | 39 | - | - |
| Fidelity Freedom Index | 90 | 90 | 90 | 90 | 90 | 89 | 77 | 62 | 56 | 49 | 40 | 30 | 21 | 19 |
| T. Rowe Price Retirement | 94 | 94 | 94 | 94 | 92 | 88 | 79 | 69 | 58 | 51 | 47 | 44 | 41 | - |
| Vanguard Target Retirement | 87 | 87 | 87 | 87 | 84 | 76 | 69 | 62 | 54 | 42 | 29 | - | - | 29 |
| BlackRock LifePath Index | 97 | 97 | 97 | 96 | 91 | 82 | 72 | 60 | 48 | 40 | - | - | - | - |
| Comparator TDF Average | 89 | 89 | 89 | 89 | 88 | 84 | 74 | 63 | 55 | 47 | | | | |
| BlackRock +/- Average | 8 | 8 | 8 | 7 | 4 | -2 | -2 | -3 | -7 | -7 | | | | |

44. The BlackRock TDFs are considerably more aggressive than the Comparator TDFs from the vintage intended for the youngest investors through those with a target retirement date of 2050. For the 2045 through 2030 vintages, the latter of which is managed for investors currently within ten years of their anticipated retirement date, the difference in equity allocations between the BlackRock TDFs and the Comparator TDFs is negligible. Though the BlackRock TDFs become considerably more conservative in the 2025 vintage and at retirement, each of the Comparator TDFs ultimately reach a terminal equity allocation that is at or below the 40% of the BlackRock TDFs.

---

[8]Current equity allocations were compiled from Vanguard Advisor's online "Compare Products" tool. Where an equity allocation is blank, the TDF does not offer that respective vintage. The equity allocation in the BlackRock TDFs' Retirement vintage is shown in the 2020 column.



ii.   <u>Performance Comparisons</u>

45.   The contention that the performance of a "to," ostensibly more conservative, TDF cannot be compared to more aggressive series relies on the presumption that a considerably heavier weight to equities will likely produce greater returns, as compensation for the assumption of greater risk.  The industry-leading equity allocation of the longest-dated vintages of the BlackRock TDFs has refuted this notion consistently and dramatically throughout the Class Period.  The repeatedly inferior returns of the vintages serving young investors are matched by similar performance shortcomings across the BlackRock TDFs' glide path.[9]  The below performance data, comparing the three- and five-year annualized returns[10] of the BlackRock

---

[9]The only exception is the BlackRock Retirement TDF, which has regularly generated better trailing returns than the two Comparator TDFs that also offer a Retirement vintage (Fidelity Freedom Index and Vanguard Target Retirement). But the outperformance of a single vintage does not exonerate the rest of the suite's putrid performance.  Indeed, TDFs are evaluated and selected as a single suite.  Moreover, as the BlackRock TDFs are a "to retirement" investment, they are managed with the expectation that investors will withdraw their assets from the Plan upon reaching the Retirement vintage or shortly thereafter.

[10]Virtually all competent investment advisors emphasize that fiduciaries should focus on three- and five-year returns to evaluate the performance of an investment over periods most closely approximating a market cycle and persistent

TDFs to those of the Comparator TDFs, represents information that was easily accessible to Defendants during the Class Period and would have been reviewed by prudent fiduciaries. Defendants could have sought this comparative returns data at any time from its recordkeeper (since recordkeepers regularly provide such data to their customers), as well as from the Plan's other service providers, or, in the alternative, obtained it themselves in real time through just a few clicks of a computer mouse.  At any point in the Class Period, such data would have been sufficient to convince a fiduciary following a prudent process to investigate alternatives and ultimately replace the BlackRock TDFs.

- By the metrics available to Defendants at the start of the Class Period, as of the most recent quarter-end, the three- and five-year annualized returns of the 2045 through 2055[11] BlackRock TDFs, each of which possessed a considerably greater equity allocation than the average of the Comparator TDFs, trailed those of the Comparator TDFs and had consistently done so for many consecutive quarters. The entire suite, bar the Retirement vintage, ranked in the bottom half among the Comparator TDFs. As of the end of the Second Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below shortcomings.

| 3-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.52 | 5.80 | 6.06 | 6.22 | 6.39 | 6.59 | 6.80 | 7.00 |
| Best Performing Comparator TDF | 7.57 | 8.29 | 8.62 | 8.59 | 8.61 | 8.63 | 8.65 | 8.61 |
| Worst Performing Comparator TDF | 5.54 | 6.26 | 6.42 | 6.71 | 6.75 | 6.82 | 6.89 | 6.98 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | 4 |

poor performance over those periods demands investigation and action by fiduciaries.  Any suggestion that a TDF has a lifespan of 10 or 25 years and, therefore, performance metrics of three to five years should not be considered is nonsensical because (a) at any point in time, many vintages of TDFs have shorter lifespans than 10, and especially 25, years, and (b) most importantly, in light of employment mobility in the United States (with the average employee holding a position for slightly more than four years), competent and informed fiduciaries understand that many participants will not maintain their TDF investments within a defined contribution plan such as the Plan until the actual target date of the given investment.  Thus, three- and five-year performance is paramount in the minds of any competent fiduciary of a retirement plan.

[11] The BlackRock 2060 TDF did not have a three-year track record until the Fourth Quarter of 2017. The BlackRock 2065 TDF did not launch until September 2019.

| 5-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.39 | 5.69 | 5.96 | 6.17 | 6.34 | 6.52 | 6.70 | 6.97 |
| Best Performing Comparator TDF | 7.64 | 8.45 | 8.75 | 8.69 | 8.73 | 8.73 | 8.74 | 8.74 |
| Worst Performing Comparator TDF | 5.08 | 5.75 | 5.88 | 6.18 | 6.23 | 6.29 | 6.28 | 6.41 |
| BlackRock Rank (out of 5) | 4 | Last | 4 | Last | 4 | 4 | 4 | 4 |

- As of the end of the **Third Quarter of 2016**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.07 | 5.33 | 5.56 | 5.74 | 5.91 | 6.08 | 6.20 | 6.30 |
| Best Performing Comparator TDF | 6.67 | 7.11 | 7.55 | 7.67 | 7.70 | 7.75 | 7.77 | 7.75 |
| Worst Performing Comparator TDF | 5.26 | 5.81 | 6.12 | 6.35 | 6.36 | 6.39 | 6.42 | 6.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.72 | 8.54 | 9.24 | 9.87 | 10.44 | 10.95 | 11.44 | 11.86 |
| Best Performing Comparator TDF | 10.65 | 12.01 | 12.76 | 12.91 | 13.07 | 13.11 | 13.13 | 13.13 |
| Worst Performing Comparator TDF | 7.65 | 8.81 | 9.25 | 10.13 | 10.22 | 10.36 | 10.53 | 10.73 |
| BlackRock Rank (out of 5) | 4 | Last | Last | Last | 4 | 4 | 4 | 4 |

- As of the end of the **Fourth Quarter of 2016**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.68 | 3.88 | 4.05 | 4.19 | 4.30 | 4.38 | 4.41 | 4.41 |
| Best Performing Comparator TDF | 4.61 | 4.67 | 5.03 | 5.15 | 5.19 | 5.28 | 5.28 | 5.26 |
| Worst Performing Comparator TDF | 3.96 | 4.23 | 4.52 | 4.56 | 4.61 | 4.62 | 4.65 | 4.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.45 | 7.19 | 7.84 | 8.45 | 8.94 | 9.42 | 9.82 | 10.16 |
| Best Performing Comparator TDF | 8.96 | 10.40 | 11.14 | 11.31 | 11.46 | 11.51 | 11.52 | 11.50 |
| Worst Performing Comparator TDF | 6.55 | 7.59 | 8.12 | 8.94 | 9.02 | 9.16 | 9.26 | 9.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the **First Quarter of 2017**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.09 | 4.48 | 4.83 | 5.14 | 5.40 | 5.56 | 5.62 | 5.62 |
| Best Performing Comparator TDF | 5.37 | 5.72 | 6.38 | 6.73 | 6.84 | 6.99 | 7.01 | 7.00 |
| Worst Performing Comparator TDF | 4.78 | 5.14 | 5.72 | 5.95 | 6.14 | 6.17 | 6.20 | 6.17 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.76 | 6.42 | 7.01 | 7.56 | 8.01 | 8.40 | 8.68 | 8.92 |
| Best Performing Comparator TDF | 8.21 | 9.36 | 10.13 | 10.43 | 10.59 | 10.67 | 10.69 | 10.66 |
| Worst Performing Comparator TDF | 6.04 | 6.91 | 7.56 | 8.27 | 8.33 | 8.42 | 8.46 | 8.61 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the Second Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.67 | 4.08 | 4.45 | 4.79 | 5.07 | 5.23 | 5.25 | 5.19 |
| Best Performing Comparator TDF | 5.10 | 5.57 | 6.08 | 6.57 | 6.69 | 6.85 | 6.87 | 6.86 |
| Worst Performing Comparator TDF | 4.41 | 4.73 | 5.35 | 5.66 | 5.83 | 5.82 | 5.85 | 5.80 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.51 | 7.34 | 8.08 | 8.76 | 9.36 | 9.87 | 10.24 | 10.54 |
| Best Performing Comparator TDF | 9.27 | 10.47 | 11.42 | 11.85 | 12.07 | 12.16 | 12.16 | 12.16 |
| Worst Performing Comparator TDF | 6.96 | 8.01 | 8.77 | 9.73 | 9.82 | 9.93 | 10.01 | 10.19 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the Third Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.14 | 5.77 | 6.34 | 6.85 | 7.30 | 7.57 | 7.67 | 7.68 |
| Best Performing Comparator TDF | 6.83 | 7.46 | 8.03 | 8.61 | 8.85 | 9.01 | 9.05 | 9.05 |
| Worst Performing Comparator TDF | 5.92 | 6.38 | 7.19 | 7.61 | 7.97 | 8.02 | 8.06 | 8.02 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.18 | 7.02 | 7.78 | 8.47 | 9.05 | 9.55 | 9.87 | 10.11 |
| Best Performing Comparator TDF | 8.81 | 10.10 | 11.12 | 11.65 | 11.90 | 12.00 | 12.04 | 12.02 |
| Worst Performing Comparator TDF | 6.71 | 7.67 | 8.54 | 9.47 | 9.56 | 9.65 | 9.70 | 9.85 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the Fourth Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.66 | 6.48 | 7.21 | 7.89 | 8.48 | 8.85 | 8.97 | 8.96 | 8.96 |
| Best Performing Comparator TDF | 7.41 | 8.11 | 8.75 | 9.56 | 9.89 | 10.09 | 10.16 | 10.15 | 9.68 |
| Worst Performing Comparator TDF | 6.55 | 7.07 | 7.85 | 8.39 | 8.91 | 9.14 | 9.16 | 9.11 | 9.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | 4 |

| 5-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.58 | 7.51 | 8.32 | 9.09 | 9.75 | 10.28 | 10.61 | 10.82 |
| Best Performing Comparator TDF | 9.09 | 10.36 | 11.50 | 12.13 | 12.45 | 12.57 | 12.62 | 12.60 |
| Worst Performing Comparator TDF | 7.30 | 8.29 | 9.30 | 10.36 | 10.46 | 10.54 | 10.60 | 10.74 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the First Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.37 | 6.03 | 6.65 | 7.17 | 7.49 | 7.60 | 7.59 | 7.59 |
| Best Performing Comparator TDF | 6.50 | 7.12 | 7.86 | 8.86 | 9.20 | 9.41 | 9.53 | 9.51 | 9.49 |
| Worst Performing Comparator TDF | 5.62 | 6.06 | 6.83 | 7.35 | 7.86 | 8.10 | 8.11 | 8.05 | 8.06 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.51 | 6.30 | 6.99 | 7.63 | 8.18 | 8.62 | 8.84 | 8.98 |
| Best Performing Comparator TDF | 7.92 | 8.83 | 9.94 | 10.63 | 10.93 | 11.07 | 11.12 | 11.12 |
| Worst Performing Comparator TDF | 6.31 | 7.12 | 8.07 | 8.97 | 9.04 | 9.09 | 9.14 | 9.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Second Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.10 | 5.89 | 6.60 | 7.26 | 7.83 | 8.19 | 8.32 | 8.30 | 8.31 |
| Best Performing Comparator TDF | 6.64 | 7.27 | 8.16 | 9.19 | 9.56 | 9.76 | 9.88 | 9.90 | 9.89 |
| Worst Performing Comparator TDF | 6.04 | 6.49 | 7.19 | 7.66 | 8.14 | 8.40 | 8.40 | 8.37 | 8.37 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.99 | 6.77 | 7.47 | 8.10 | 8.66 | 9.07 | 9.28 | 9.40 |
| Best Performing Comparator TDF | 8.06 | 8.89 | 9.86 | 10.61 | 10.91 | 11.06 | 11.15 | 11.12 |
| Worst Performing Comparator TDF | 6.79 | 7.58 | 8.54 | 9.31 | 9.49 | 9.53 | 9.58 | 9.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **Third Quarter of 2018**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.27 | 8.60 | 9.80 | 10.95 | 11.94 | 12.55 | 12.74 | 12.72 | 12.70 |
| Best Performing Comparator TDF | 9.61 | 10.59 | 11.56 | 13.05 | 13.45 | 13.76 | 13.91 | 13.91 | 13.87 |
| Worst Performing Comparator TDF | 8.40 | 9.70 | 10.66 | 11.61 | 12.54 | 12.91 | 12.90 | 12.89 | 12.89 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.58 | 6.34 | 7.02 | 7.64 | 8.20 | 8.59 | 8.75 | 8.81 |
| Best Performing Comparator TDF | 7.32 | 8.01 | 8.98 | 9.79 | 10.08 | 10.26 | 10.35 | 10.32 |
| Worst Performing Comparator TDF | 6.55 | 7.24 | 8.13 | 8.69 | 9.17 | 9.26 | 9.28 | 9.30 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **Fourth Quarter of 2018**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.71 | 5.23 | 5.70 | 6.14 | 6.51 | 6.69 | 6.72 | 6.70 | 6.69 |
| Best Performing Comparator TDF | 5.72 | 6.12 | 6.92 | 7.43 | 7.62 | 7.77 | 7.83 | 7.81 | 7.81 |
| Worst Performing Comparator TDF | 5.32 | 5.73 | 6.07 | 6.41 | 6.75 | 6.78 | 6.77 | 6.77 | 6.75 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.70 | 4.00 | 4.27 | 4.51 | 4.70 | 4.80 | 4.82 | 4.81 |
| Best Performing Comparator TDF | 4.69 | 5.00 | 5.63 | 5.95 | 6.05 | 6.17 | 6.19 | 6.17 |
| Worst Performing Comparator TDF | 4.24 | 4.50 | 4.82 | 4.99 | 5.10 | 5.13 | 5.12 | 5.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **First Quarter of 2019**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.36 | 7.38 | 8.28 | 9.14 | 9.89 | 10.34 | 10.48 | 10.47 | 10.45 |
| Best Performing Comparator TDF | 8.24 | 9.05 | 9.79 | 10.88 | 11.28 | 11.50 | 11.62 | 11.62 | 11.58 |
| Worst Performing Comparator TDF | 7.12 | 8.18 | 8.87 | 9.52 | 10.20 | 10.43 | 10.43 | 10.43 | 10.42 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| 5-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.70 | 5.26 | 5.75 | 6.19 | 6.57 | 6.80 | 6.89 | 6.88 |
| Best Performing Comparator TDF | 5.93 | 6.41 | 7.12 | 7.77 | 7.98 | 8.12 | 8.19 | 8.18 |
| Worst Performing Comparator TDF | 5.54 | 5.92 | 6.39 | 6.69 | 6.96 | 7.08 | 7.08 | 7.05 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Second Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.65 | 7.69 | 8.61 | 9.48 | 10.24 | 10.68 | 10.82 | 10.81 | 10.80 |
| Best Performing Comparator TDF | 8.75 | 9.67 | 10.51 | 11.37 | 11.69 | 11.83 | 11.95 | 11.92 | 11.90 |
| Worst Performing Comparator TDF | 7.27 | 8.39 | 9.39 | 10.09 | 10.79 | 11.05 | 11.03 | 11.04 | 11.03 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.14 | 5.58 | 5.99 | 6.33 | 6.52 | 6.57 | 6.53 |
| Best Performing Comparator TDF | 5.79 | 6.26 | 6.90 | 7.54 | 7.74 | 7.90 | 7.97 | 7.94 |
| Worst Performing Comparator TDF | 5.48 | 5.82 | 6.22 | 6.48 | 6.72 | 6.86 | 6.85 | 6.82 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Third Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.25 | 7.05 | 7.74 | 8.40 | 8.96 | 9.28 | 9.37 | 9.37 | 9.35 |
| Best Performing Comparator TDF | 7.59 | 8.28 | 9.22 | 10.04 | 10.04 | 10.12 | 10.21 | 10.19 | 10.16 |
| Worst Performing Comparator TDF | 6.66 | 7.52 | 8.29 | 8.78 | 9.28 | 9.41 | 9.42 | 9.41 | 9.41 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.22 | 5.73 | 6.16 | 6.56 | 6.90 | 7.09 | 7.15 | 7.15 |
| Best Performing Comparator TDF | 6.27 | 6.74 | 7.16 | 7.75 | 7.95 | 8.09 | 8.14 | 8.13 |
| Worst Performing Comparator TDF | 5.80 | 6.33 | 6.67 | 6.92 | 7.15 | 7.23 | 7.24 | 7.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Fourth Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q19 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.80 | 9.75 | 10.65 | 11.44 | 11.92 | 12.10 | 12.10 | 12.08 |
| Best Performing Comparator TDF | 10.34 | 11.09 | 12.28 | 12.76 | 12.96 | 13.11 | 13.11 | 13.05 |
| Worst Performing Comparator TDF | 9.47 | 10.24 | 10.86 | 11.48 | 11.80 | 11.80 | 11.80 | 11.79 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | 4 | 4 | 4 | 4 |

| 5-Year Return as of 4Q19 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.40 | 7.04 | 7.63 | 8.14 | 8.45 | 8.55 | 8.55 | 8.55 |
| Best Performing Comparator TDF | 7.60 | 8.10 | 8.99 | 9.30 | 9.45 | 9.55 | 9.54 | 8.86 |
| Worst Performing Comparator TDF | 6.99 | 7.41 | 7.81 | 8.20 | 8.41 | 8.41 | 8.38 | 8.38 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | 4 | 4 | 4 | 3 (of 4) |

- As of the end of the First Quarter of 2020, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.23 | 2.76 | 2.31 | 1.85 | 1.49 | 1.29 | 1.26 | 1.25 |
| Best Performing Comparator TDF | 4.00 | 4.11 | 3.96 | 3.77 | 3.78 | 3.79 | 3.80 | 3.79 |
| Worst Performing Comparator TDF | 2.29 | 2.23 | 2.10 | 2.03 | 1.77 | 1.79 | 1.78 | 1.79 |
| BlackRock Rank (out of 5) | 3 | 4 | 4 | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.45 | 3.32 | 3.19 | 3.01 | 2.85 | 2.75 | 2.73 | 2.73 |
| Best Performing Comparator TDF | 4.49 | 4.77 | 4.87 | 4.81 | 4.89 | 4.91 | 4.91 | 4.89 |
| Worst Performing Comparator TDF | 3.36 | 3.43 | 3.41 | 3.42 | 3.21 | 3.23 | 3.19 | 3.20 |
| BlackRock Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Second Quarter of 2020, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.15 | 6.17 | 6.19 | 6.16 | 6.13 | 6.09 | 6.09 | 6.08 |
| Best Performing Comparator TDF | 7.04 | 7.52 | 8.23 | 8.38 | 8.50 | 8.63 | 8.62 | 8.59 |
| Worst Performing Comparator TDF | 6.21 | 6.39 | 6.45 | 6.50 | 6.41 | 6.42 | 6.40 | 6.39 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.84 | 6.06 | 6.26 | 6.39 | 6.47 | 6.48 | 6.48 | 6.48 |
| Best Performing Comparator TDF | 6.89 | 7.41 | 8.07 | 8.24 | 8.37 | 8.47 | 8.47 | 8.45 |
| Worst Performing Comparator TDF | 6.29 | 6.47 | 6.62 | 6.76 | 6.79 | 6.79 | 6.77 | 6.76 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Third Quarter of 2020, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.62 | 6.81 | 6.98 | 7.09 | 7.18 | 7.20 | 7.22 | 7.20 |
| Best Performing Comparator TDF | 7.37 | 7.93 | 8.75 | 9.05 | 9.18 | 9.34 | 9.30 | 9.28 |
| Worst Performing Comparator TDF | 6.86 | 7.04 | 7.16 | 7.27 | 7.32 | 7.32 | 7.31 | 7.31 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.95 | 8.55 | 9.12 | 9.58 | 9.87 | 9.95 | 9.96 | 9.94 |
| Best Performing Comparator TDF | 9.14 | 9.96 | 10.99 | 11.34 | 11.52 | 11.65 | 11.63 | 11.59 |
| Worst Performing Comparator TDF | 8.60 | 9.07 | 9.53 | 9.97 | 10.13 | 10.13 | 10.12 | 10.12 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Fourth Quarter of 2020, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.25 | 8.81 | 9.34 | 9.79 | 10.15 | 10.33 | 10.37 | 10.36 |
| Best Performing Comparator TDF | 9.40 | 9.98 | 11.19 | 11.76 | 11.96 | 12.12 | 12.11 | 12.11 |
| Worst Performing Comparator TDF | 8.73 | 9.16 | 9.50 | 9.85 | 10.20 | 10.24 | 10.22 | 10.22 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| 5-Year Return as of 4Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.19 | 10.02 | 10.81 | 11.48 | 11.97 | 12.16 | 12.18 | 12.17 |
| Best Performing Comparator TDF | 10.63 | 11.34 | 12.44 | 12.99 | 13.22 | 13.36 | 13.35 | 13.35 |
| Worst Performing Comparator TDF | 9.87 | 10.51 | 11.11 | 11.71 | 12.09 | 12.10 | 12.09 | 12.08 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the First Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.07 | 10.00 | 10.89 | 11.66 | 12.30 | 12.62 | 12.68 | 12.67 |
| Best Performing Comparator TDF | 10.64 | 11.45 | 12.37 | 13.07 | 13.29 | 13.47 | 13.45 | 13.41 |
| Worst Performing Comparator TDF | 9.62 | 10.26 | 10.86 | 11.43 | 12.03 | 12.09 | 12.07 | 12.06 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 4 | 4 | 3 | 3 |

| 5-Year Return as of 1Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.02 | 10.09 | 11.12 | 12.02 | 12.67 | 12.95 | 12.98 | 12.97 |
| Best Performing Comparator TDF | 11.14 | 12.09 | 13.08 | 13.75 | 14.02 | 14.19 | 14.18 | 14.15 |
| Worst Performing Comparator TDF | 9.95 | 10.77 | 11.57 | 12.36 | 12.89 | 12.93 | 12.92 | 12.91 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the Second Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 10.39 | 11.50 | 12.57 | 13.49 | 14.26 | 14.67 | 14.75 | 14.74 |
| Best Performing Comparator TDF | 12.24 | 13.18 | 14.02 | 14.80 | 15.25 | 15.27 | 15.24 | 15.22 |
| Worst Performing Comparator TDF | 11.06 | 11.87 | 12.60 | 13.31 | 14.07 | 14.15 | 14.13 | 14.13 |
| BlackRock Rank (out of 5) | Last | Last | Last | 4 | 4 | 3 | 3 | 3 |

| 5-Year Return as of 2Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.53 | 10.75 | 11.92 | 12.96 | 13.71 | 14.05 | 14.09 | 14.07 |
| Best Performing Comparator TDF | 11.85 | 12.94 | 13.88 | 14.69 | 15.08 | 15.11 | 15.11 | 15.09 |
| Worst Performing Comparator TDF | 10.40 | 11.49 | 12.39 | 13.30 | 13.93 | 13.97 | 13.96 | 13.96 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the Third Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.48 | 10.38 | 11.24 | 11.98 | 12.62 | 12.96 | 13.03 | 13.02 |
| Best Performing Comparator TDF | 11.24 | 12.05 | 12.83 | 13.49 | 13.93 | 13.92 | 13.88 | 13.88 |
| Worst Performing Comparator TDF | 9.86 | 10.45 | 11.01 | 11.55 | 12.17 | 12.24 | 12.24 | 12.23 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 3 | 3 | 3 |

| 5-Year Return as of 3Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.83 | 9.92 | 10.97 | 11.88 | 12.55 | 12.85 | 12.89 | 12.88 |
| Best Performing Comparator TDF | 10.78 | 11.75 | 12.79 | 13.52 | 13.79 | 13.99 | 13.98 | 13.97 |
| Worst Performing Comparator TDF | 9.61 | 10.44 | 11.24 | 12.03 | 12.62 | 12.66 | 12.65 | 12.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the Fourth Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 13.26 | 15.03 | 16.74 | 18.26 | 19.51 | 20.15 | 20.26 | 20.25 |
| Best Performing Comparator TDF | 15.78 | 17.25 | 18.75 | 19.96 | 20.36 | 20.53 | 20.54 | 20.51 |
| Worst Performing Comparator TDF | 14.17 | 15.45 | 16.66 | 17.89 | 19.06 | 19.19 | 19.18 | 19.17 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 3 | 3 | 3 |

| 5-Year Return as of 4Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.54 | 10.74 | 11.88 | 12.90 | 13.67 | 14.03 | 14.09 | 14.07 |
| Best Performing Comparator TDF | 11.51 | 12.53 | 13.97 | 14.75 | 15.02 | 15.17 | 15.17 | 15.13 |
| Worst Performing Comparator TDF | 10.35 | 11.23 | 12.06 | 12.88 | 13.55 | 13.62 | 13.61 | 13.61 |
| BlackRock Rank (out of 5) | Last | Last | Last | 4 | 4 | 3 | 3 | 3 |

- As of the end of the First Quarter of 2022, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.34 | 9.65 | 10.89 | 11.98 | 12.89 | 13.35 | 13.44 | 13.42 |
| Best Performing Comparator TDF | 10.14 | 11.07 | 12.36 | 13.08 | 13.27 | 13.27 | 13.13 | 13.13 |
| Worst Performing Comparator TDF | 8.92 | 9.84 | 10.77 | 11.68 | 12.61 | 12.74 | 12.71 | 12.71 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 1 | 1 | 1 |

| 5-Year Return as of 1Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.58 | 8.64 | 9.64 | 10.52 | 11.19 | 11.51 | 11.56 | 11.54 |
| Best Performing Comparator TDF | 9.06 | 9.85 | 11.14 | 11.72 | 11.89 | 11.95 | 11.86 | 11.82 |
| Worst Performing Comparator TDF | 8.14 | 8.85 | 9.57 | 10.28 | 10.89 | 10.96 | 10.95 | 10.95 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 2 | 2 | 2 |

- As of the end of the Second Quarter of 2022, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.55 | 4.28 | 4.97 | 5.54 | 6.00 | 6.20 | 6.23 | 6.21 |
| Best Performing Comparator TDF | 5.06 | 5.46 | 6.33 | 6.48 | 6.43 | 6.25 | 5.99 | 5.90 |
| Worst Performing Comparator TDF | 3.49 | 4.15 | 4.80 | 5.35 | 5.67 | 5.68 | 5.68 | 5.65 |
| BlackRock Rank (out of 5) | 4 | 3 | 4 | 4 | 2 | 2 | 1 | 1 |

| 5-Year Return as of 2Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.82 | 5.48 | 6.10 | 6.62 | 6.99 | 7.14 | 7.16 | 7.14 |
| Best Performing Comparator TDF | 5.91 | 6.52 | 7.39 | 7.60 | 7.64 | 7.59 | 7.41 | 7.35 |
| Worst Performing Comparator TDF | 5.07 | 5.50 | 5.96 | 6.42 | 6.80 | 6.81 | 6.80 | 6.79 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 2 | 2 | 2 | 2 |

46.     The BlackRock TDFs dramatically, repeatedly underperformed the average return of the Comparator TDFs for virtually the entire relevant period, as demonstrated in the charts below comparing the three- and five-year annualized returns of several representative vintages of the BlackRock TDFs to those of the same iterations of the Comparator TDFs, namely the 2025, 2040, and 2055 TDFs (these are the second-shortest dated (2025) and second-longest dated (2055) BlackRock TDFs), as well as the fund that represents the midpoint of the nine vintages for which there were at least three-year trailing returns (2040).  These three vintages represent conservative, moderate and aggressive stages along the BlackRock TDF glidepath and are representative of the shortcomings of the entire suite.





47.     These returns, and all returns cited in this Complaint, are annualized, meaning the differences in the returns between the BlackRock TDFs and Comparator TDFs are equivalent to the specified difference in *each* of the three or five years in the period *compounded*.  This is not the same as saying the funds underperformed by the specified amount over the entire time period.  These are persistent and substantial shortcomings that could not have supported a determination by prudent fiduciaries that the BlackRock TDFs could be justifiably retained in the Plan.

48.     Again, the above information was readily obtainable and computable by Defendants in real time throughout the relevant period.  Defendants, however, neglected to undertake any analysis of the BlackRock TDFs against appropriate peers using the above or other important performance metrics.  If Defendants had taken their fiduciary duties seriously during the Class Period, they would have replaced the BlackRock TDFs with a suitable alternative TDF.  Their failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

49.     The consistently deplorable performance of the BlackRock TDFs was also visible at the suite level throughout the pertinent period.  The below charts demonstrate the rolling out- or underperformance of the BlackRock TDFs versus each of the Comparator TDFs, weighting the returns of each distinct vintage equally to produce an aggregate suite-level return. This is yet another form of TDF analysis regularly undertaken by all prudent investment advisors and competent fiduciaries.

BlackRock Rolling Returns vs American Funds





BlackRock Rolling Returns vs Fidelity Freedom Index





BlackRock Rolling Returns vs T. Rowe Price





BlackRock Rolling Returns vs Vanguard





50.     The returns of each vintage of a TDF suite, however, are not experienced by a

Plan in equal measure, as Plan assets are distributed in different quantities across the glide path

depending on a multitude of Plan-specific factors.  Accordingly, prudent fiduciaries perform the

same analysis as set forth above to compare aggregate suite-level returns that are asset-weighted, as shown below. [12]

### BlackRock Rolling Returns vs American Funds





_____

[12]Returns are weighted according to the asset levels invested in each vintage of the BlackRock TDFs at the start of the Class Period. For example, if the Plan had $100 million in total assets in the BlackRock TDFs, $10 million of which was invested in the 2030 vintage, the returns of the 2030 vintage would be given a 10% weight in the performance composite.

BlackRock Rolling Returns vs Fidelity Freedom Index





## BlackRock Rolling Returns vs T. Rowe Price





BlackRock Rolling Returns vs Vanguard





51. Defendants had immediate access to historical and then-current returns data for the BlackRock TDFs, and could have sought comparative data from its recordkeeper and/or the Plan's other service providers, or obtained it themselves in real time through just a few clicks of a computer mouse.

52.     The troubling pattern shown above, which persisted for the entire Class Period, was ignored by Defendants, who neglected to appropriately scrutinize the BlackRock TDFs against any of the many superior TDFs available in the market.  If Defendants had taken their fiduciary duties seriously during the Class Period, they would have replaced the BlackRock TDFs with a suitable alternative TDF suite.  Their failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

## V.     ERISA'S FIDUCIARY STANDARDS

53.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.  Section 404(a) of ERISA, 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A)     for the exclusive purpose of
>
> > (i)     providing benefits to participants and their beneficiaries; and
> >
> > (ii)     defraying reasonable expenses of administering the plan;
>
> [and]
>
> (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

54.     Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in a plan and their beneficiaries and defraying reasonable expenses of administering the plan.

55.     Under ERISA, parties that exercise any authority or control over plan assets, including the selection of plan investments and service providers, are fiduciaries and must act prudently and solely in the interest of participants in a plan.

56.     ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n. 8 (2d Cir. 1982).

57.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.  Section 405(a) of ERISA, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.  ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2)     if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

58.     Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under Section 409, 29 U.S.C. § 1109.  Section 409(a) of ERISA provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon

fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## VI.   CLASS ALLEGATIONS

59. This action is brought as a class action by Plaintiffs on behalf of themselves and the following proposed Class:

> All participants and beneficiaries in the CUNA Mutual 401(k) Plan for Non-Represented Employees at any time on or after August 19, 2016 and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendants and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

60. This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

61. **Numerosity**. Plaintiffs are informed and believe that there are at least thousands of Class members throughout the United States. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

62. **Commonality**. There are numerous questions of fact and/or law that are common to Plaintiffs and all the members of the Class, including, but not limited to the following:

(a) Whether Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;

-40-

(b)      Whether Defendants breached their fiduciary duties under ERISA by failing to

defray the reasonable expenses of administering the Plan; and

(c)      Whether and what form of relief should be afforded to Plaintiffs and the Class.

63.      **Typicality**.  Plaintiffs, who are members of the Class, have claims that are typical

of all the members of the Class.  Plaintiffs' claims and all the Class members' claims arise out

of the same uniform course of conduct by Defendants and arise under the same legal theories

that are applicable as to all other members of the Class.  In addition, Plaintiffs seek relief for the

Plan under the same remedial theories that are applicable as to all other members of the Class.

64.      **Adequacy of Representation**.  Plaintiffs will fairly and adequately represent the

interests of the members of the Class.  Plaintiffs have no conflicts of interest with other

members of the Class or interests that are any different from the other members of the Class.

Plaintiffs have retained competent counsel experienced in class action and other complex

litigation, including class actions under ERISA.

65.      **Potential Risks and Effects of Separate Actions**.  The prosecution of separate

actions by or against individual Class members would create a risk of: (A) inconsistent or

varying adjudications with respect to individual Class members that would establish

incompatible standards of conduct for the party opposing the Class; or (B) adjudications with

respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would substantially

impair or impede their ability to protect their interests.

66.      **Predominance**.  Common questions of law and fact predominate over questions

affecting only individual Class members, and the Court, as well as the parties, will spend the

vast majority of their time working to resolve these common issues.  Indeed, virtually the only

individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

67.     **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority of, if not all, Class members are unaware of Defendants' breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

68.     **Manageability**.  This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and aggregate damages can be presented on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

69.     Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above.  Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

70.     Plaintiffs' counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of

Civil Procedure.  Moreover, treating this case as a class action is superior to proceeding on an individual basis and there will be no difficulty in managing this case as a class action.

71.     Therefore, this action should be certified as a class action under Rules 23(a) and 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

**COUNT I**
**(For Breach of Fiduciary Duty)**

72.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

73.     Defendants' conduct, as set forth above, violates their fiduciary duties under Sections 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan.  In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

74.     To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, each such Defendant is liable under 29 U.S.C. § 1105(a) because he, she, they, or it was a co-fiduciary and knowingly participated in, or concealed, a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their, or its specific responsibilities giving rise to

his, her, their, or its fiduciary status, or knowingly failed to cure a breach of fiduciary duty by another fiduciary and failed to take reasonable efforts to remedy the breach.

75. As a direct result of Defendants' breaches of duties, the Plan has suffered losses and damages.

76. Pursuant to Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132, Defendants are liable to restore to the Plan the losses that have been suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other recoverable expenses of litigation.

<u>**COUNT II**</u>
**(Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)**

77. Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

78. CMFG is responsible for appointing, overseeing, and removing members of the Administrative Committee, who, in turn, are responsible for appointing, overseeing, and removing members of the Committee.

79. In light of its appointment and supervisory authority, CMFG had a fiduciary responsibility to monitor the performance of the Committee and its members. In addition, CMFG and the Administrative Committee had a fiduciary responsibility to monitor the performance of the members of the Committee.

80. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

81.     To the extent that fiduciary monitoring responsibilities of CMFG or the Committee was delegated, each Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

82.     CMFG and the Committee breached their fiduciary monitoring duties by, among other things:

> (a)   Failing to monitor and evaluate the performance of their appointees or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and  omissions with respect to the Plan;

> (b)   Failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA; and

> (c)   Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.

83.     As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses.  Had CMFG and the Committee discharged their fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

84.     CMFG and the Committee are liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, to restore to the Plan any profits made through use of Plan assets, and are subject to other

equitable or remedial relief as appropriate.

85.     Each of the Defendants also knowingly participated in the breaches of the other

Defendants, knowing that such acts constituted breaches; enabled the other Defendants to

commit breaches by failing to lawfully discharge their own fiduciary duties; and knew of the

breaches by the other Defendants and failed to make any reasonable effort under the

circumstances to remedy the breaches. Defendants, thus, are liable for the losses caused by the

breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

**COUNT III**
**(In the Alternative, Liability for Knowing Breach of Trust)**

86.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of

this Complaint as if fully set forth herein.

87.     In the alternative, to the extent that any of the Defendants are not deemed a

fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise

subject to equitable relief as a non-fiduciary from further participating in a knowing breach of

trust.

88.     To the extent any of the Defendants are not deemed to be fiduciaries and/or are

not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants

are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge

and information to avoid the fiduciary breaches at issue here and knowingly participated in

breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment

options, all of which was unjustifiable in light of the size and characteristics of the Plan.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the Class and the Plan, demand

judgment against Defendants for the following relief:

(a)     Declaratory and injunctive relief pursuant to Section 502 of ERISA, 29 U.S.C. §

1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or for

restitution and/or damages as set forth above, plus all other equitable or remedial relief as

the Court may deem appropriate pursuant to Sections 409 and 502 of ERISA, 29 U.S.C.

§§ 1109 and 1132;

(c)     Pre-judgment and post-judgment interest at the maximum permissible rates,

whether at law or in equity;

(d)     Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)     Such further and additional relief to which the Plan may be justly entitled and the

Court deems appropriate and just under all of the circumstances.

## <u>NOTICE PURSUANT TO ERISA § 502(h)</u>

To ensure compliance with the requirements of Section 502(h) of ERISA, 29 U.S.C. §

1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this

Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified

mail, return receipt requested.

DATED: August 19, 2022                         Respectfully submitted,

<u>/s/ Sarah E. Siskind</u>
**Local Counsel**
Sarah E. Siskind
Elizabeth Eberle
Miner, Barnhill & Galland, P.C.
44 E. Mifflin Street, Suite 803
Madison, WI 53703
Telephone: (608) 255-5200
Facsimile: (608) 255-5380
Email: beberle@lawmbg.com
          ssiskind@lawmbg.com

James C. Shah (*pro hac vice* motion to be filed)
Alec J. Berin
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
       ajberin@millershah.com

James E. Miller
Laurie Rubinow
Miller Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
       lrubinow@millershah.com

Kolin C. Tang
Miller Shah LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Attorneys for Plaintiffs, the Plan and the Proposed Class*