IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

CHRISTINE ABEL, STEVEN AULD and
DAVID PENNINGTON, individually and
as representatives of a class of similarly
situated persons, on behalf of the CUNA
MUTUAL 401(K) PLAN FOR
NON-REPRESENTED EMPLOYEES,

    Plaintiffs,                                       OPINION and ORDER

    v.                                                   22-cv-449-wmc

CMFG LIFE INSURANCE COMPANY;
THE BOARD OF TRUSTEES OF CMFG LIFE
INSURANCE COMPANY; THE EMPLOYEE
BENEFIT PLAN ADMINISTRATION
COMMITTEE OF THE CUNA MUTUAL
401(K) PLAN FOR NON-REPRESENTED
EMPLOYEES; and DOES No. 1-20, Whose
Names Are Currently Unknown,

    Defendants.
_____

    Plaintiffs are former participants in the CUNA Mutual 401(k) Plan for Non-represented Employees ("the Plan"), an employer-sponsored retirement plan with more than 4,000 participants and $865 million in assets. Plaintiffs contend that the entities responsible for investing the Plan's assets are breaching their fiduciary duties to plan participants in violation of the Employee Retirement Income Security Act ("ERISA"). Specifically, plaintiffs say that defendants have imprudently retained investments in "BlackRock LifePath Index Funds" despite their poor performance and the availability of other, better-performing, target date funds. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that plaintiffs have

1

alleged insufficient facts to support their claims. For the reasons below, the court will grant that motion, although plaintiffs will be given a chance to file an amended complaint. Before the court is also a motion for leave to participate as an amicus curiae filed on behalf of the American Benefits Council, the ERISA Industry Committee, the American Retirement Association, and the Committee on Investment of Employee Benefit Assets, Inc (dkt. #19), which will be granted as well.

## ALLEGATIONS OF FACT[1]

The Plan is a defined contribution retirement plan in which participants choose where to invest their contributions from among various investment options approved by the Plan. (Cpt. (dkt. #1) ¶ 20.) The named defendants maintain the Plan in one capacity or another, and are allegedly all responsible for selecting, monitoring, and retaining the service providers that provide investment advice, recordkeeping and other administrative services.

Among the more than 20 investment options offered by the Plan are so-called "target date funds" or "TDFs", which are an investment tool consisting of a portfolio of underlying funds generally intended to gradually shift to a more conservative portfolio as the investor's assumed, target-retirement date approaches. (*Id.* ¶ 24.) There are a wide range of such TDFs offered on the market, with different investment strategies and goals. Depending on its specific investment goals, a TDF may choose to use a particular

---

[1] The following allegations are drawn from plaintiffs' complaint and accepted as true for purposes of resolving defendants' pending motion to dismiss, although additional allegations from the complaint are included in the opinion section.

"glidepath," which is intended to determine the change over time in its holdings of the investment in stocks, bonds, or cash. (*Id.* ¶ 24.) Typically, TDF glidepaths are managed either "to retirement" or "through retirement." (*Id.* ¶ 25.) A "to retirement" investment generally assumes a participant will withdraw their funds at or shortly after retirement; in contrast, a "through retirement" investment generally assumes a participant will *gradually* withdraw their funds after retirement. (*Id.*) TDFs that are designed to take investors "to retirement" will typically move to a more conservative investment portfolio faster than "through retirement," since the latter TDFs are designed to reduce the risk of the participant outliving their savings. (*Id.* ¶ 26.) For example, "to retirement" TDFs tend to have a higher ratio of bonds to stocks as the retirement date approaches.

All TDFs are actively managed, in that the fund managers make changes to the allocations to stocks, bonds, and cash over time, although the underlying funds may be managed either actively or passively. (*Id.* ¶¶ 24, 28.) TDFs that follow primarily or entirely passive strategies are index-based and provide broad market exposure at minimal cost. In contrast, TDFs that hold actively managed funds tend to provide "more diversified asset class exposure" at a higher cost but may have the potential for higher returns as the fund managers hand select stocks or bonds in an attempt to outperform the market. (*Id.*)

Since at least December 31, 2010, the Plan has offered the participants a suite of ten BlackRock LifePath Index Funds ("BlackRock TDFs"), among other investment options. (*Id.* ¶ 30.) The BlackRock TDFs hold index-based and passively managed funds, with low administrative fees and a "to retirement" glidepath. The BlackRock TDFs were the third most popular TDFs in the market during the proposed class period and were the

3

Plan's "Qualified Default Investment Alternative" or "QDIA." (*Id.* ¶ 34.)[2] Because it was assigned QDIA status, a plan participant's contributions were automatically invested in the BlackRock TDF with the target year closest to the participant's assumed retirement age unless that participant affirmatively selected another investment preference. (*Id.*) Thus, assigning the BlackRock TDFs as the QDIA resulted in approximately 46% of the Plan's assets being invested in the BlackRock TDFs by December 1, 2020. (*Id.* ¶ 35.)

Despite the popularity of BlackRock TDFs, plaintiffs allege the performance of those funds "paled in comparison" to other TDFs available during the class period. More specifically, plaintiffs identify four other TDFs (the "Comparator TDFs"), comparing their returns to that of the BlackRock TDFs during the class period. (*Id.* ¶¶ 42–50.) Plaintiffs further allege that these four funds would be the "most likely alternatives to be selected" by the Plan were the BlackRock TDFs replaced as the QDIA:

> 1) Vanguard Target Retirement, a passively managed fund with a "through retirement" glidepath;
>
> 2) T. Rowe Price Retirement, an actively managed fund with a "through retirement" glidepath;
>
> 3) American Funds Target Date Retirement, an actively managed fund with a "through retirement" glidepath; and
>
> 4) Fidelity Freedom, a passively managed fund with a "through retirement" glidepath.

---

[2] In addition to being the third most popular TDF series in the market, the Morningstar report cited by plaintiffs in their complaint (dkt. #1, ¶ 27) listed the BlackRock TDFs as "gold rated," which is the highest rating it could be assigned. (2022 Morningstar Report (dkt. #13-8) 9–10, 26).

4

Finally, plaintiffs contend that defendants breached their fiduciary duties to the Plan both by initially selecting and then retaining the BlackRock TDFs, rather than one of the Comparator TDFs.

OPINION

Plaintiffs advance three ERISA claims: (1) defendants breached their duty of prudence by choosing and retaining the BlackRock TDFs as a Plan investment option, despite their poor performance compared to other investment options; (2) defendants breached their duty to monitor the performance of other fiduciaries who had chosen poorly performing investments for the Plan; and (3) defendants knowingly breached their duty of trust to the Plan and its participants. Defendants move to dismiss all three of these claims for failure to state a claim.

A Rule 12(b)(6) motion to dismiss turns on whether plaintiffs provided defendants with fair notice of their claims *and* alleged facts plausibly suggesting that they are entitled to relief. *McCray v. Wilkie,* 966 F.3d 616, 620 (7th Cir. 2020). In putative ERISA class actions, such motions are an "important mechanism for weeding out meritless claims." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (citation omitted). Accordingly, courts are to "apply a careful, context-sensitive scrutiny of a complaint's allegations," remembering that: (1) "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs," *id.*; and (2) there is a "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022).

5

I. **Standing**

Before turning to the merits of defendants' motion to dismiss, there is the threshold, jurisdictional question of standing, which defendants raise in their motion to dismiss, albeit briefly. To have standing to sue, a plaintiff must show three things: (1) plaintiff suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) the injury "is likely to be redressed" if the plaintiff obtains a "favorable judicial decision" at the close of the lawsuit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In this case, defendants do not dispute that plaintiffs have standing to raise claims under ERISA based on allegations of breach of defendants' fiduciary duties in choosing and retaining the BlackRock TDFs as a Plan investment option during the class period, allegedly resulting in a reduction in value of plaintiffs' retirement accounts. However, defendants *do* dispute plaintiffs' standing to seek any *injunctive* relief, because the named plaintiffs are no longer plan participants. However, this argument is premature.

Certainly, the possible award of injunctive relief may be a relevant consideration in deciding the scope of any proposed class, but the court need not decide that issue now as a matter of subject matter jurisdiction. Courts do not dismiss parts of claims at the pleading stage. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Here, plaintiffs have standing to bring an ERISA breach of fiduciary duty claim, and that is as far as the inquiry takes us for purposes of deciding defendants' motion to dismiss.

**II. Principal Claim for Breach of Duty of Prudence**

Turning to the merits of plaintiffs' substantive claims, ERISA requires plan fiduciaries to act "prudently" in managing an employee benefit plan. 29 U.S.C. § 1104(a)(1)(B). In managing an employer-sponsored retirement plan, this duty includes "monitor[ing] all plan investments and remov[ing] imprudent ones." *Hughes*, 595 U.S. at 173; *see also Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). That being said, the duty of prudence under ERISA does not require the fiduciaries of an individual account "to act as personal investment advisers to plan Participants." *Albert*, 47 F.4th at 578. And "the ultimate outcome of an investment is *not* proof of imprudence." *Id.* (emphasis added and citations omitted); *see also Patterson v. Morgan Stanley*, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019) ("ERISA does not require clairvoyance on the part of plan fiduciaries, nor does it countenance opportunistic Monday-morning quarter-backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of certain investment options.")

To state a breach of the duty of prudence under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). Defendants do not dispute that the Employee Benefit Plan Administration Committee of the CUNA Mutual 401(K) Plan for Non-represented Employees ("the Committee") is a plan fiduciary that may be sued under ERISA for breach of its duty to act prudently,[3] or that poorly performing investments may have harmed plan

---

[3] Defendants *do* dispute that the other defendants -- CMFG Life Insurance Co., The Board of

participants. However, the Committee contends that even taking plaintiffs allegations as true, they simply do not show, nor allow a reasonable inference, that it acted imprudently.

Like many cases involving claims for breach of fiduciary duty, plaintiffs do not actually know what process the fiduciaries used in deciding to include BlackRock TDFs as an investment option, much more as a QDIA, so plaintiffs must rely on circumstantial allegations to support a plausible claim. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) ("[A] claim under ERISA may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct."). As detailed in the fact section above, however, plaintiffs only broadly allege that defendants "acted imprudently" by "employ[ing] a fundamentally irrational decision-making process," suggesting further that defendants "appear to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return." (Cpt. (dkt. #1) ¶¶ 32–33.) Plaintiffs also allege in conclusory language that "any objective evaluation of the BlackRock TDFs would have resulted in the selection of a more consistent, better performing, and more appropriate TDF suite." (*Id.* ¶ 32.)

As support for these sweeping assertions, plaintiffs point to the performance of their cherry picked Comparator TDFs, alleging that BlackRock TDFs' underperformance compared to those funds was "dramatic[]" and "consistently deplorable." (*Id.* ¶¶ 36, 46,

---

Trustees of CMFG Life Insurance Company, the individual Board members, or the individual Committee members – are "plan fiduciaries" with respect to their conduct at issue in the complaint. The court need not resolve this dispute, however, because plaintiffs' complaint fails to state a claim against even the Committee.

8

49.) Plaintiffs purport to show this underperformance using a variety of metrics that allegedly would have been "easily accessible" to defendants. (*Id.* ¶ 45.) In short, plaintiffs ask this court to infer with the benefit of hindsight unavailable to the Committee that defendants committed a breach of their fiduciary duty simply because the BlackRock TDFs ultimately underperformed in comparison to the Comparator TDFs.

The court agrees with defendants that plaintiffs' allegations are insufficient to support a fiduciary breach claim under ERISA. Notably, numerous other district courts have considered motions to dismiss nearly identical complaints to that filed by plaintiffs' counsel here -- each challenging 401(K) plans who had offered participants the BlackRock TDFs among other investment options -- and all but one court has held similar allegations are insufficient to support a claim for breach of the duty of prudence at the pleadings stage. *E.g., Antoine v. Marsh & McLennan Companies, Inc.*, No. 22-cv-6637 (JPC), 2023 WL 6386005, at *10 (S.D.N.Y. Sept. 30, 2023) (dismissing claim challenging imprudence of including BlackRock TDFs as investment option in 401(K) plan); *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-4417, 2023 WL 5184138, at *3–6 (N.D. Cal. Aug. 11, 2023) (same); *Luckett v. Wintrust Fin. Corp.*, No. 22-cv-3968, 2023 WL 4549620, at *3–4 (N.D. Ill. July 14, 2023) (same); *Anderson v. Advance Pubs., Inc.*, No. 22-cv-6826 (AT), 2023 WL 3976411, at *3–4 (S.D.N.Y. June 13, 2023) (same); *Beldock v. Microsoft Corp.*, No. 22-cv-1062, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (same); *Hall v. Cap. One Fin. Corp.*, No. 22-cv-857, 2023 WL 2333304, at *4–7 (E.D. Va. Mar. 1, 2023) (same); *Tullgren*

9

*v. Booz Allen Hamilton*, No. 22-cv-856, 2023 WL 2307615, at *4–8 (E.D. Va. Mar. 1, 2023) (same).[4]

The above decisions discuss several reasons why plaintiffs' allegations fail to state a claim. *First*, several courts have already found Comparator TDFs not similar enough to the BlackRock TDFs to provide a "meaningful benchmark" for comparison. *E.g.*, *Luckett*, 2023 WL 4549620, at *3; *Anderson*, 2023 WL 3976411, at *4; *Hall*, 2023 WL 2333304, at *6. This matters because the Seventh Circuit, and many other courts, require a plaintiff alleging a breach of prudence claim based on underperformance of an investment option to identify a "sound basis for comparison—a meaningful benchmark," meaning a comparable investment option that a prudent fiduciary would have considered. *See Albert*, 47 F.4th at 581–82; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). As these courts point out, prudence is not measured in a vacuum; rather, courts must look at the context in which the fiduciary made the investment decision, *including* available alternative investments.

In particular, to provide a "meaningful benchmark," the identified comparators cannot be simply alternatives funds with "some similarities" to the BlackRock TDFs. *Meiners*, 898 F.3d at 823. To survive a motion to dismiss, plaintiffs must allege details showing "a sound basis for comparison" *Albert*, 47 F.4th at 582, such as specific factual

---

[4] The court is only aware of one outlier reaching the opposite result: *Trauernicht v. Genworth Fin. Inc.*, No. 22-cv-532, 2023 WL 5961651, at *9–14 (E.D. Va. Sept. 13, 2023). However, in that case, the plaintiffs included additional allegations in an amended complaint, including that the defendants failed to even discuss or consider BlackRock TDFs' performance compared to other options during the relevant time period and that one of the comparator TDFs was identified in plan documents as an appropriate benchmark.

10

allegations demonstrating that the comparator funds actually "hold similar securities, have similar investment strategies, and reflect a similar risk profile" to the investments ultimately chosen by the fiduciaries. *Matousek v. MidAmerican Energy Co.,* 51 F.4th 274, 281 (8th Cir. 2022).

By comparison, plaintiffs here merely allege in their complaint that the Comparator TDFs "represent an ideal group for comparison, as they represent the most likely alternatives" due to their market share. (Cpt. (dkt. #1) ¶¶ 38, 39.) Several courts have found this very allegation insufficient, specifically in light of plaintiffs' other allegations showing significant differences between the BlackRock TDFs and the Comparator TDFs. Specifically, plaintiffs concede that, in contrast to the BlackRock TDFs, two of the Comparator TDFs are actively, rather than passively, managed, representing significantly different management styles, risks and potential returns. *See Albert*, 47 F.4th at 580–81 (discussing important differences between active and passive management styles); *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791 at *16 (N.D. Ill. Sept. 28, 2022) (finding index funds and actively managed funds to be an "apples-to-oranges comparison because the two types of funds have "different levels of risk and performance outcomes"); *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (finding that the difference in management styles of active and passively managed funds render comparison inapt). Even more telling, *all* of the Comparator TDFs selected by plaintiffs use a "through retirement" investment strategy, rather than a "to retirement" strategy used by the BlackRock TDFs, and even plaintiffs concede that "to retirement" and "through retirement" funds represent different investment strategies, with "to retirement" funds offering a faster glidepath to

11

lower risk, lower return than the "through retirement" funds plaintiffs use as comparators. (Cpt. (dkt. #1) ¶¶ 25, 26.) On their face then, these distinctions render the Comparator TDFs inapt as a "meaningful benchmark." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, n.14 (10th Cir. 2023) (finding that a "through retirement" fund was materially different from a "to retirement" fund).

*Second*, plaintiffs appear to be comparing the BlackRock TDFs' performance against the modestly better performances by Comparator TDFs during a select group of three- and five-year trailing averages. In contrast, TDFs are generally intended to grow for decades. Thus, as other courts have already held, to state a breach of fiduciary claim based on a fund's underperformance relative to a benchmark index, a plaintiff must allege facts showing that: (1) the investment "persistently" or "materially" underperformed compared to meaningful-benchmark funds, *Dorman v. Charles Schwab Co.*, 2019 WL 580785 at *6 (N.D. Cal. Feb. 8, 2019); *Gonzalez*, 632 F. Supp. 3d at 163; *or* (2) there were other, significantly "serious signs of distress" relative to other such funds, *Smith*, 37 F.4th at 1168. Otherwise, "a prudent fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy, and will not necessarily reflexively jettison investment options in favor of the prior year's top performers because past performance is no guarantee of future success." *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022) (internal citations and quotation marks omitted). As the Sixth Circuit explained, simply "pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow

for fifty years does not suffice to plausibly plead an imprudent decision." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022).

Yet this is exactly what plaintiffs do here by including numerous performance charts in their complaint, which purport to show levels of underperformance during three and five-year periods by BlackRock TDFs, ranging from 0.2% to around 5%, with the average underperformance being between 1 and 3%. Again, district courts around the country have rejected breach of fiduciary duty claims based on similar underperformance metrics, finding alleged, short-term differences in performance of between 1.14 to 4.4% immaterial. *See Gonzalez*, 632 F. Supp. 3d at 164 (rejecting a duty of prudence theory based in part on a 2.57% underperformance relative to a benchmark); *Cho v. Prudential Ins. Co. of Am.*, No. 19-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (same for underperformance of 3.71%); *Patterson*, 2019 WL 4934834, at *11 (1.14% underperformance relative to a benchmark "is relatively small and certainly not enough to support a claim for breach of the duty of prudence"); *Bekker v. Neuberger Berman Grp. LLC*, No. 16 Civ. 6123 (LTS), 2018 WL 4636841, at *2, 7 (S.D.N.Y. Sept. 27, 2018) (same for underperformance of approximately 4.4% relative to a benchmark).

Undercutting plaintiffs' performance-based claim even further are their charts showing that the BlackRock TDFs did *not* always underperform relative to the Comparator TDFs throughout the class period. Instead, the BlackRock TDFs appear to have been on somewhat of an upswing in rankings among the Comparators toward the end of the class period, vacillating somewhere between first and last out of the five funds in 2021 and 2022. (Cpt. (dkt. #1) ¶ 45.) And as discussed, a prudent fiduciary necessarily must factor *long-*

13

*term* outcomes into the investment calculus for retirement funds meant to be managed over decades. *See Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) ("Nothing in the record suggests that it was not reasonable and prudent to select conservative funds with long-term growth potential and to stay with those mutual funds even during years of lower performance."); *Patterson*, 2019 WL 4934834, at *11 ("[T]he duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the prior year's top performers. If that were the case, Plan sponsors would be duty-bound to merely follow the industry rankings for the past year's results…"). Thus, allegations that the BlackRock TDFs typically, if modestly, underperformed relative to the Comparator TDFs for a limited number of years are not enough to carry plaintiffs' claims of breach of defendants' fiduciary duties past the pleading threshold.

*Third* and finally, plaintiffs' allegations are undercut by their own admission that the BlackRock TDFs offered "low fees." (Cpt. (dkt. #1) ¶ 33.) "An ERISA fiduciary's duty of prudence encompasses a duty to prevent plan participants from incurring excessive and unreasonable fees." *Vellali v. Yale Univ.*, No. 16 Civ. 1345, 2022 WL 13684612, at *6 (D. Conn. Oct. 21, 2022); *see also Tibble*, 575 U.S. at 525 ("Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan."); *Bracalente*, 2023 WL 5184138, at *4 (in dismissing nearly identical claims against a fiduciary offering BlackRock TDFs in a portfolio of investments, explaining that "the Complaint's own allegations cut against an inference of imprudence" in acknowledging "that the BlackRock TDFs charged 'low fees' and enjoyed significantly improved performance in early 2022"). Even plaintiffs' counsel

argued in another case that the BlackRock TDFs would be a suitable option in a 401(k) plan, and that another plan breached its fiduciary duties by *not* offering the BlackRock TDFs in that plan's investment portfolio. *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 2417098, at *2 (N.D. Cal. June 14, 2021).

In sum, the duty of prudence requires a fiduciary to make reasonable judgments; it does not require them to pick the best performing fund each year or even each decade. *Meiners*, 898 F.3d at 823 ("No authority requires a fiduciary to pick the best performing fund."). Too many variables are at play to make that a viable basis for holding a plan administrator to have violated its fiduciary duty. Accordingly, more than just alleging that the Plan underperformed relative to other available options, plaintiffs must plead sufficient facts from which a reasonable jury could find that the selection and retention of the BlackRock TDFs fell outside the range of a fiduciary's reasonable judgments. Plaintiffs allege no such red flags that defendants disregarded, such as investors abandoning the BlackRock funds, reports critical of the funds or its managers, gross, sustained underperformance or allegations of self-dealing, conflict of interest, excessive costs, or anything else of that nature. Instead, plaintiffs' allegations suggest, at worst, that defendants chose to stay their hand in a long-term investment that was, according to the complaint itself, one of the lowest-cost and most popular TDFs in the industry, which actually performed *better* than many of the Comparator TDFs in the later years of the putative class period. Given this, the complaint fails to give rise to a plausible inference that defendants' decisions were outside the range of the exercise of reasonable judgment expected by a fiduciary. Therefore, plaintiffs have failed to state a fiduciary breach claim.

### III. Two, Additional Derivative Claims

In Count II of their complaint, plaintiffs separately claim that defendants failed to monitor alleged breached by other fiduciaries and co-fiduciaries. Courts have recognized that when one ERISA fiduciary appoints another fiduciary, there *is* a duty to take "prudent and reasonable action" to determine whether the appointed fiduciary is meeting their obligations. *Baker v. Kingsley*, 387 F.3d 649, 663 (7th Cir. 2004). However, the Seventh Circuit has held that a failure to monitor claim cannot proceed without an underlying fiduciary breach. *Albert*, 47 F.4th at 583. Since plaintiffs have failed to allege sufficient facts to support a breach of fiduciary duty based on imprudent investing, plaintiffs cannot state a claim for a failure to monitor.

In Count III, plaintiffs contend that any defendants who are found not to be fiduciaries or co-fiduciaries are liable for a knowing breach of trust. However, these claims, too, are dependent upon establishing an underlying fiduciary breach. *See Luckett*, 2023 WL 4549620, at *5 (holding that claims of a *knowing* breach of trust are derivative of a fiduciary breach claim); *Antoine*, 2023 WL 6386005, at *11 (same). Because the court has found that plaintiffs failed to allege a claim for fiduciary breach adequately, therefore, Counts II and Counts III will be dismissed as well.

### IV. Leave to Amend

Because the court is dismissing plaintiffs' complaint for failure to state a claim, the dismissal will be without prejudice, and plaintiffs may have the opportunity to file an amended complaint that includes the necessary, additional allegations. Of course,

plaintiffs should only file an amended complaint if they can, in good faith, plead sufficient facts to resolve the deficiencies discussed above.

ORDER

IT IS ORDERED that:

1) The motion for leave to file a brief as *amici curiae* by The American Benefits Council, The American Retirement Association, The Committee on Investment of Employee Benefit Assets Inc. and The ERISA Industry Committee (dkt. #19) is GRANTED.

2) Defendants' motion to dismiss (dkt. #11) is GRANTED, and plaintiffs' complaint is DISMISSED without prejudice.

3) Plaintiffs may have until February 26, 2024, to file an amended complaint if there is a good-faith basis for doing so. Otherwise, the court's order of dismissal with become *with* prejudice.

Entered this 26th day of January, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge